VIA ECF & EMAIL                                                          September 20, 2021

Hon. John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007
CronanNYSDCChambers@nysd.uscourts.gov

      Re:      *Assad v. GO Acquisition Corp. et al.*, No. 21-7076 (S.D.N.Y.)

Dear Judge Cronan:

      Pursuant to Rules 1.A and 6.A of Your Honor's Individual Practices, GO Acquisition Corp. ("GO"), GO Acquisition Founder LLC ("Sponsor"), Noam Gottesman, M. Gregory O'Hara, Jeremy Isaacs, Gilbert Ahye, and Norma Corio (together with GO and Sponsor, "Defendants") respectfully request a pre-motion conference on their anticipated Rule 12(b)(6) and 23.1 motions to dismiss Plaintiff's Complaint.

      GO is a special purpose acquisition company ("SPAC") formed to acquire an operating company through a merger or similar business combination. GO raised $575 million through an August 7, 2020 initial public offering ("IPO"). Compl. ¶ 35. In addition, GO's Sponsor invested $13,525,000 in GO, receiving Class B shares and warrants. Compl. ¶¶ 9, 36, 42. As per GO's IPO Prospectus and NYSE's rules, the IPO proceeds were deposited in a segregated trust account and invested in government securities pending the completion of GO's anticipated business combination. GO Prospectus (Aug. 4, 2020) at cover, 17. If GO has not completed such a transaction by August 7, 2022—11 months from now—GO will liquidate and return the IPO proceeds to its investors, and GO's Sponsor will lose its entire investment.

      Plaintiff asserts a novel and unsupported legal theory that GO is an "investment company" under Section 3(a)(1)(A) of the Investment Company Act of 1940 ("ICA"). This private action brought on behalf of all of GO's investors—the third putative class action this Plaintiff has commenced against a SPAC in the last two months—seeks to use Sections 36(b) and 47(b) of the ICA to unwind GO's Class B share structure. Plaintiff alleges the Class B shares are "excessive compensation" for an investment company (which GO is not). Yet, all of these purportedly unlawful arrangements were fully disclosed in the Prospectus, and Plaintiff and all shareholders have the ability to opt-out of their investment and receive their money back at the time of a business combination. Neither any court nor the SEC—which enforces the ICA and has reviewed and declared effective the registration of thousands of SPACs (including GO) over the last several decades—has ever found a SPAC to be an "investment company." Plaintiff's claims fail for multiple reasons.

      **GO Is Not An "Investment Company."** The cornerstone of Plaintiff's claims is his allegation that "investing in securities is all [GO] has ever done since its IPO." Compl. ¶ 3. But Plaintiff's own allegations confirm that GO is and has marketed itself as a SPAC solely to pursue a business combination transaction. The mere fact that GO, like virtually every other SPAC, parked its IPO proceeds in a segregated trust account holding U.S. Treasuries until GO

consummates its business combination or investors' shares are redeemed, does not make GO an investment company.

According to Plaintiff, GO is an "investment company" under the "orthodox" investment company test found in Section 3(a)(1)(A) of the ICA. Pursuant to this test, an issuer that "is or **holds itself out** as being **primarily engaged** . . . in the **business** of investing, reinvesting or trading in securities" qualifies as an investment company. 15 U.S.C. § 80a–3(a)(1)(A) (emphasis added). Plaintiff claims that GO's "primary business is to invest in securities" because it "has invested effectively all of its assets in securities of the United States government and shares of money market mutual funds." Compl. ¶ 7. But GO's disclosures clearly state that GO was formed for the "purpose of effecting a merger . . . or similar business combination," and warns investors that GO is "not intended for persons who are seeking a return on investments in government securities or investment securities." GO Prospectus (Aug. 4, 2020) at cover, 2, 32, 41. Effectuating a business combination is GO's *raison d'être*. Moreover, GO's Prospectus confirms that its trust account is simply "a holding place for funds pending" a business combination. *Id.* Against this background, GO cannot be said to be "primarily engaged" in the "business of investing" in securities.

Plaintiff's tortured reading of Section 3(a)(1)(A) cannot be reconciled with the statute as a whole or decades of SEC interpretive guidance. Plaintiff fails to appreciate key distinctions between the language of Section 3(a)(1)(A) and the "inadvertent" investment company test under Section 3(a)(1)(C), which underscore that an issuer cannot be considered an investment company merely by "owning" or "holding" non-investment securities like the government securities held by GO for a limited period of time. *Compare* 15 U.S.C. § 80a–3(a)(1)(A) *with* 80a–3(a)(1)(C). Moreover, such an issuer cannot be said to be "primarily engaged . . . in the business of investing, reinvesting or trading" within the meaning of 15 U.S.C. § 80a–3(a)(1)(A). Plaintiff's claims fail under the statute's plain language.

Nor can Plaintiff find refuge in the five-factor test the SEC articulated in *In the Matter of Tonopah Mining Company of Nevada*, 26 S.E.C. 426 (July 21, 1947) to consider whether an issuer is primarily engaged in the business of investing in securities. In applying these factors, what "principally matters is the beliefs the company is likely to induce in its investors." *SEC v. Nat'l Presto Indus., Inc.*, 486 F.3d 305, 315 (7th Cir. 2007). Here, given that GO marketed itself as a SPAC seeking a business combination with an operating company, no reasonable investor could believe that GO is primarily engaged in the business of investing in securities. Plaintiff does not allege otherwise; in fact, Plaintiff has not even pleaded that *he* invested in GO with this belief. The other *Tonopah* factors also compel the conclusion that GO is not an investment company. Plaintiff does not *and cannot* plead that GO's managers are primarily engaged in managing a portfolio of securities; that GO's holding its assets in trust—as required by NYSE rules—is inconsistent with its purpose to effectuate a business combination; or that, while GO presently holds nearly all of its assets in trust, "this situation will [not] be changed substantially in the foreseeable future." *Tonopah*, 26 S.E.C. at 429. In fact, in 11 months, GO must either effectuate a business combination or return monies to investors. *See* GO Prospectus (Aug. 4, 2020) at 25.

**Plaintiff's Claims Are Untimely.** Plaintiff's claims are all subject to a one year statute of limitations. *See In re Gartenberg*, 636 F.2d 16, 18 (2d Cir. 1980) ("Section 36(b) has a built-in one year statute of limitations."); *Phx. Four, Inc. v. Strategic Res. Corp.*, 2006 WL 399396, at *13–15 (S.D.N.Y. Feb. 21, 2006) (Section 47(b) claims subject to one-year limitations period);

*EklecCo NewCo LLC v. Town of Clarkstown*, 2018 WL 3023159, at *22 n.5 (S.D.N.Y. June 18, 2018) (claims for declaratory relief subject to same limitations period as underlying claims). Plaintiff was on notice of all of the alleged violations purportedly giving rise to his claims no later than August 4, 2020, the date the Prospectus was filed. Plaintiff filed this lawsuit on August 20, 2021, more than one year later. Moreover, Plaintiff "cannot maintain a claim for a declaratory judgment where the underlying substantive claim has been dismissed" as untimely. *See, e.g.*, *Spiteri v. Russo*, 2013 WL 4806960, *19 n.30 (E.D.N.Y. Sept. 7, 2013).

**Plaintiff Cannot Assert A Private Claim.** Plaintiff's self-appointed role as enforcer of the ICA goes far beyond the narrowly proscribed circumstances in which courts have permitted private enforcement of the ICA. Critically, GO's Form S-1 Registration Statement (rather than Form N-1 applicable to investment companies) fully disclosed the complained-of Class B share structure and trust fund investment parameters and was declared effective by the SEC. But even if the ICA applied and there was a private right of action for rescission, Plaintiff has not plausibly pleaded any predicate violations in support of his rescission claim. For example, Plaintiff contends that rescission is warranted under Section 16(a), which requires that the members of the board of directors be elected "by the holders of the outstanding voting securities of such company." 15 U.S.C. § 80a–16(a). But the Complaint alleges that the holders of the Class B shares elected the members of the board, and those shares were the only shares in existence in June 2020 when GO was formed and the Board was elected. Compl. ¶¶ 29–30, 81. Plaintiff similarly fails to allege that the Class B shares were transferred in a manner that violated Sections 22 and 23; to the contrary, the Complaint, or materials incorporated therein, establish that the Class B shares were transferred for cash consideration, as required by the statute, and for more than their net asset value. *See* Prospectus Schedule F-1. Plaintiff's pleading failures are too numerous to detail in full here.

**Plaintiff Lacks Standing.** Certain of Plaintiff's claims cannot be asserted (a) directly because Plaintiff is not a party to the agreement he seeks to rescind, or (b) derivatively because Plaintiff has not adequately pleaded (i) demand futility under Rule 23.1; and (ii) any facts to support his conclusory assertion that he possesses derivative standing. Compl. ¶ 19.

\* \* \*

Because Plaintiff's unfounded allegations place significant uncertainty on GO's business and its pursuit of a business combination, Defendants respectfully request the following schedule for prompt briefing and hearing of their motion: an October 4, 2021 (opening), October 18, 2021 (answering) and October 29, 2021 (reply) briefing schedule for motions to dismiss, and a hearing at Your Honor's earliest convenience.

Hon. John P. Cronan								- 4 -								September 20, 2021

						Respectfully submitted,

| /s/ *Matthew S. Dontzin* | /s/ *Jonathan K. Youngwood* | /s/ *Paul R. DeFillipo* |
|---|---|---|
| Matthew S. Dontzin | Jonathan K. Youngwood | Paul R. DeFillipo |
| Tibor L. Nagy | Stephen P. Blake | David H. Wollmuth |
| David A. Fleissig | Rachel Sparks Bradley | Steven S. Fitzgerald |
| Jason A. Kolbe | Simpson Thacher | Joshua M. Slocum |
| Dontzin Nagy |    & Bartlett LLP | Grant J. Bercari |
|    & Fleissig LLP | 425 Lexington Avenue | Wollmuth Maher |
| 980 Madison Avenue | New York, New York 10017 |    & Deutsch LLP |
| New York, NY 10075 | Telephone: (212) 455-2000 | 500 Fifth Avenue |
| Telephone: (212) 717-2900 | Facsimile: (212) 455-2502 | New York, NY 10110 |
| mdontzin@dnfllp.com | jyoungwood@stblaw.com | Telephone: (212) 382-3300 |
| tibor@dnfllp.com | sblake@stblaw.com | pdefilippo@wmd-law.com |
| dafleissig@dnfllp.com | rachel.sparksbradley@stblaw.com | dwollmuth@wmd-law.com |
| jkolbe@dnfllp.com | | sfitzgerald@wmd-law.com |
| | | jslocum@wmd-law.com |
| | | gbercari@wmd-law.com |

cc:	All Counsel (*by ECF*)